[Nos. A121390, A122619. First Dist., Div. One. May 22, 2009.]

AMERICANS FOR SAFE ACCESS et al., Plaintiffs and Respondents, v. COUNTY OF ALAMEDA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.B. and II.B.

**1288**

.

## Counsel

Remcho, Johansen & Purcell, Robin B. Johansen, James C. Harrison and Thomas A. Willis for Defendants and Appellants.

Strumwasser & Woocher, Gregory G. Luke, Fredric D. Woocher, Michael J. Strumwasser, Aimee Dudovitz and Aparna Sridhar for Plaintiffs and Respondents.

## OPINION

**MARCHIANO, P. J.**—These consolidated cases consider how to determine the integrity of certain electronic voting machines under Elections Code section 15630.[1] In A121390, defendants County of Alameda and its registrar of voters, Dave MacDonald (County), appeal from a judgment entered on a grant of summary adjudication and from a permanent injunction, both in favor of plaintiffs Americans for Safe Access and three Berkeley voters (ASA). We affirm the judgment in part and reverse in part. We affirm the permanent injunction with the proviso that it is to be narrowly construed, as we explain below.

ASA sought and obtained a substantial award of attorney fees under the private attorney general statute (Code Civ. Proc., § 1021.5). In A122619, County appeals, claiming the award is excessive. We reverse the fee award in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *The Judgment and Permanent Injunction (A121390)*

The material facts are undisputed. We take them from the trial court's order granting ASA's motion for summary adjudication.

Measure R, a ballot measure of the City of Berkeley, was on the ballot for the election on November 2, 2004. Some of the ballots in that election were cast with Diebold Accuvote-TS direct-recorded electronic (DRE) voting machines. The registrar of voters (the Registrar) certified the election on November 30, 2004. Measure R did not pass.

On December 3, 2004, ASA requested a recount of the votes cast on Measure R. Section 15630, involving examination of ballots for recount purposes, provides, as pertinent here, that "All ballots, whether voted or not, *and any other relevant material*, may be examined as part of any recount if the voter . . . requesting the recount so requests." (Italics added.)

Pursuant to section 15630, ASA requested four categories of elections materials: (1) redundant vote data for the DRE machines; (2) chain of

---

[1] Subsequent statutory citations are to the Elections Code unless otherwise indicated.

custody documentation and system access logs for the DRE system; (3) audit logs; and (4) logic and accuracy test results. The Registrar denied ASA's request for these materials, on the ground that he did not consider them relevant to the recount.

The Registrar conducted a hand recount of the paper ballots cast as provisional or absentee ballots. ASA declined his offer to recount the images of the ballots cast on the DRE machines. The recount, concluded on January 7, 2005, did not change the outcome of the election regarding Measure R.

ASA filed a petition for writ of mandate, complaint for declaratory and injunctive relief, and statement of contest, alleging that the four categories of materials were relevant to the recount. The pleading was subsequently amended. The first and second causes of action sought relief under the Elections Code, primarily section 15630, in mandate and declaratory relief, respectively. The third cause of action sought primarily injunctive relief under both the Elections Code and the California Constitution. The fourth, fifth, and sixth causes of action sought relief on constitutional grounds, based on equal protection, due process, and the right to have one's vote counted, respectively.

County demurred to the pleading, and the trial court sustained the demurrer without leave to amend and dismissed the action.

ASA appealed. We reversed on the specific ground that ASA's allegations of relevance were sufficient to survive demurrer. We remanded for the limited purpose of the trial court's determination, "on evidentiary facts, whether the requested materials are in fact relevant." (*Americans for Safe Access v. County of Alameda* (Apr. 28, 2006, A111594) [nonpub. opn.].)

On remand, County moved for summary judgment on the ground that the materials were not relevant under section 15630. On April 12, 2007, the trial court denied County's motion on the ground that "the evidence offered in support of the motion is incomplete."

ASA moved for summary adjudication on the ground that the materials were relevant under the statute. ASA filed a separate statement of material facts, citing declarations of computer experts and other evidence, including evidence obtained during discovery. As the trial court noted, County did not file "an opposition separate statement, and therefore concede[s] that the

material facts offered by [ASA] are not disputed." The trial court set forth those material facts as follows.

Credible experts established that the requested audit logs contained information about how the DRE machines functioned before, during, and after the election of November 2, 2004. This included information about system malfunction or error, and human access to the units and to the vote tally server. The requested redundant data contained copies of votes and information about votes cast electronically during the election, that could be compared to the vote tallies to confirm the accuracy of the electronically recorded votes. The requested chain of custody records contained information about human access to the DRE machines and the regulation of such access before, during, and after the election. The requested logic and accuracy test reports contained information about the proper functioning and preparation of the DRE machines used in the election.

Information in the audit logs and chain of custody records could show unauthorized access and possible manipulation of the voting data. Information in the redundant data could show a discrepancy between the votes cast on the individual DRE machines and the vote tallies generated by the central server.

All of the data and documents requested by ASA contain information that would aid in confirming or casting doubt upon the accuracy of the votes cast on the DRE machines. Undisputed expert opinion states that in the absence of paper ballots, the requested information is the only way to assess the accuracy of electronically stored votes.[2]

Relying on excerpts from the deposition of the Registrar, the trial court found that County "concede[s] that, if the data requested by [ASA] showed discrepancies between what was recorded as the vote and what was actually tallied as the vote, such information would be 'of concern' to the accuracy of the vote."

Based on the foregoing, the trial court concluded the requested information was relevant under section 15630, and should have been disclosed to ASA. Also on April 12, 2007, the court granted summary adjudication on all of ASA's causes of action. The court granted summary adjudication on the first,

---

[2] This expert opinion comes from the declarations of two computer experts, Jones and Bishop.

second, and third causes of action "for [v]iolation of the Elections Code." The court granted summary adjudication on the fourth, fifth, and sixth causes of action, reaching and deciding ASA's constitutional claims.

Subsequently, on February 27, 2008, the court entered judgment for ASA on its combined petition and complaint.

The court also entered a permanent injunction that "in all future elections conducted in Alameda County, [County] shall produce for public examination relevant election materials of the following types, in connection with an election that is the subject of a recount, if any such materials are requested by a voter pursuant to [section] 15630:

"1. All audit logs

"2. All redundantly stored vote data

"3. Complete chain of custody information for all system components and for human access to stored data

"4. All logic and accuracy test reports."

The court further decreed that County was "hereby ENJOINED from refusing to produce for public examination relevant election materials in the categories listed above as part of any future recount, in connection with an election that is the subject of a recount, if any such materials are requested by a voter pursuant to [section] 15630."

We shall affirm the trial court's grant of summary adjudication on the first three causes of action, based on the Elections Code, because we conclude that the trial court correctly determined the materials requested were relevant within the meaning of section 15630. We shall reverse the grant of summary judgment on the fourth, fifth, and sixth causes of action, but only on the ground that—having properly disposed of the issues between the parties on statutory grounds—the trial court should not have reached the constitutional issues raised by those causes of action. We shall affirm the permanent injunction, but with the key proviso that it is limited in scope to DRE machines—which County no longer uses.[3]

---

[3] It is undisputed that, in 2006—the year before the injunction issued—County switched from Diebold DRE machines to a system of paper ballots, which are read by an optical scanner. County retains one electronic touch screen voting machine, equipped with a voter-verified paper trail as now required by law, in each polling place for voters with disabilities who cannot mark a paper ballot. In the November 2006 election, these machines recorded only 0.82 percent of the vote.

B. *Attorney Fees (A122619)*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. DISCUSSION

### A. *The Judgment and Permanent Injunction (A121390)*

#### 1. *The Judgment*

Where, as here, an order granting summary adjudication determines all the issues between the parties, the order is appealable. The appeal from the order is construed to be an appeal from the final judgment. (*Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101 [39 Cal.Rptr.2d 737]; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 278, pp. 731–733.) We review an order granting summary judgment or summary adjudication de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498 [60 Cal.Rptr.3d 11] (*Ramalingam*).)

The issue central to the grant of summary adjudication on statutory grounds, i.e., on the first three causes of action, is the issue of relevancy. The trial court determined that the four categories of requested materials are relevant to the recount requested in this case. We agree.

■ This issue is straightforward. Evidence Code section 210 defines relevant evidence as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

It is factually undisputed that, in the absence of paper ballots, the only way to accurately determine the vote tally is to ensure that the vote tally of the DRE machines matches the votes actually cast. The requested materials are necessary for a determination that the DRE machines accurately recorded the votes cast and were not tampered with, for purposes of an accurate recount process. The materials are the only way to determine a discrepancy between

---

\*See footnote, *ante*, page 1287.

votes cast and votes electronically recorded. Even the Registrar admits that such a discrepancy would be "of concern" to the accuracy of the vote tally.

Under Evidence Code section 210, the requested materials are clearly relevant. This conclusion renders moot County's complaint that the trial court relied on the arguably broader definition of relevancy in the discovery context, as set forth in *Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546 [39 Cal.Rptr.2d 896]. We note the trial court cited Evidence Code section 210 in its order granting ASA's motion. In any case, we review the trial court's ruling, not its rationale. (*Ramalingam, supra,* 151 Cal.App.4th at p. 498.)

County contends that the trial court ignores the plain meaning of the term "recount." County relies on *Keane v. Smith* (1971) 4 Cal.3d 932 [95 Cal.Rptr. 197, 485 P.2d 261]. That was an election contest case, not a recount case. (*Id.* at p. 934.) The court, in dictum, referred to a recount as "the mechanical act of tabulating votes." (*Id.* at p. 938.) The case clearly involved paper ballots (*id.* at pp. 934–935), and we would assume a 1971 case, involving a 1970 election, predated electronic voting. In the absence of paper ballots, the tabulation of votes involves electronic data gathering processes—not a mechanical act.

County also suggests that ASA's position is an attempt to seek a forum on electronic voting per se, rather than a simple recounting of votes. The County points to other methods of determining whether a voting system is accurate, such as a court-ordered recount (§ 15640, subd. (a)(2) [ground for recount "[e]rrors or failures, whether electronic, mechanical or otherwise, in the safekeeping, handling, tallying, counting, recording, or certification of the ballots or votes cast, sufficient to make it likely that the result of the election was affected . . . or sufficient to cast substantial doubt on the substantial accuracy of the results . . ."]) or an election contest (§ 16100, subd. (g) [ground for contest "[t]hat there was an error in the vote-counting programs or summation of ballot counts"]). But these procedures involve different prerequisites, are more complex, and are inapplicable to what is required under section 15630. The fact that the Legislature has chosen to provide multiple layers of methods to determine an accurate vote count does not mean that, for any given election, the specific material requested by ASA becomes irrelevant to the determination of the accuracy under the count within the meaning of section 15630.

■ We thus conclude that the trial court correctly determined the materials requested were relevant within the meaning of section 15630.

■ Because the trial court properly disposed of the issues between the parties on statutory grounds, it should not have reached the constitutional issues raised by the fourth, fifth, and sixth causes of action. It is a well-settled rule that if statutory relief is adequate, it is unnecessary and inappropriate for a court to reach constitutional issues. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230–231 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Accordingly, we reverse the judgment with regard to the fourth, fifth, and sixth causes of action.

### 2. *The Permanent Injunction*

In 2006—the year before the injunction issued—County switched from Diebold DRE machines to a system of paper ballots, which are read by an optical scanner.

Thus, the permanent injunction involves only DRE machines, which are no longer in use. ASA's separate statement of material facts speaks only to DRE machines. The vast bulk of its evidence speaks only to DRE machines. While there are passing references in the expert declarations to alleged technical flaws with optical scanners, no issue regarding County's present voting system was framed in the summary adjudication proceedings. The court's order granting summary adjudication does not mention the current voting system; neither does the court's judgment or the permanent injunction.

Consequently, the permanent injunction only applies when County employs DRE machines to record votes. With that key proviso, we affirm the injunction.[5]

### B. *Attorney Fees (A122619)*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment is affirmed with regard to the first, second, and third causes of action, and reversed as to the fourth, fifth, and sixth causes of action. The permanent injunction is affirmed, subject to the proviso that the permanent injunction only applies when County employs DRE machines to record votes.

---

[5] Our narrow interpretation of the injunction renders moot County's various challenges to it, which center around the application of the injunction to the current system of paper ballots.

[*]See footnote, *ante*, page 1287.

With regard to the lodestar, the fee award is affirmed. With regard to the multiplier, the fee award is reversed and the cause is remanded for further proceedings on reconsideration of the multiplier. Those proceedings should culminate in an explanation of the trial court's ruling.

Each side shall bear its own costs on appeal.

Margulies, J., and Graham, J.,* concurred.

---

*Retired judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.